Michael O. Hardison (MH-0691)
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
J.K. INTERNATIONAL PTY. LTD.,

                        Plaintiff,                      07 Civ. 7328 (SHS)
                                                            ECF CASE

- against-

OLDENDORFF CARRIERS GMBH &
CO.,                                              **HARDISON DECLARATION**

                        Defendant.
-----------------------------------------------------------x

      MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. §1746, declares and states as follows:

      1.    I am a member of the Bar of the State of New York, I am admitted to practice before this Honorable Court, and I am a partner in the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff.

      2.    I make this Declaration in opposition to Defendant's Motion To Vacate Maritime Attachment which is without factual or legal support as demonstrated by the accompanying Declaration of Sandeep Mohan dated November 12, 2007 ("Mohan Declaration"), the accompanying Declaration of John Blacker dated November 14, 2007 ("Blacker Declaration"), and Plaintiff's Memorandum of Law In Opposition To Defendant's Motion

To Vacate Maritime Attachment.

### The Four Aqua Stoli Requirements

3. The Second Circuit, in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434 (2d Cir. 2006), held that, in order to defeat a motion to vacate a maritime attachment, a plaintiff need only show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. 460 F.3d at 445. Plaintiff can easily make the required showing. Indeed, not one of the four requirements is even at issue in this case.

4. Plaintiff's Verified Complaint In Admiralty ("Complaint") sets forth a valid prima facie admiralty claim against the Defendant (a copy of the Complaint is attached as Exhibit 1). The Complaint alleges that Defendant and Plaintiff entered into a maritime contract of charter party and that Defendant breached the terms of the charter party (Exhibit 1 at ¶¶ 4 and 20). Defendant does not contest that the Complaint sets forth a valid prima facie admiralty claim against Defendant.

5. The Complaint also alleges that the Defendant cannot be found within the district (Exhibit 1 at ¶ 26). Moreover, it is clear that the Defendant cannot be found within the district. I undertook a search for the Defendant but was unable to locate any evidence that the Defendant could be found within the district. The nature and result of my search are set forth in a declaration attached to the Complaint (Exhibit 1 at Pages 9 and 10). Defendant

does not contest that it cannot be found within the district.

6. The Complaint further alleges that property of Defendant may be found within the district (Exhibit 1 at ¶ 26). Property of Defendant was found within the district and attached as demonstrated by a letter received from Rawle and Henderson LLP who act as counsel for The Bank of New York (a copy of the letter is attached as Exhibit 2). The assets attached at The Bank of New York were released subsequently after Defendant provided substitute security in the form of a P & I Club Letter of Undertaking but this does not change the fact that property of Defendant may be and was found within the district. Defendant does not contest that its property may be and was found within the District.

7. The final requirement is that there be no statutory or maritime law bar to the attachment. I submit, based on the fact that I have practiced maritime law for more than 26 years, that there is no statutory or maritime law bar to the attachment. Defendant does not contest that there is no statutory or maritime law bar to the attachment.

8. Plaintiff has satisfied all of the <u>Aqua Stoli</u> requirements and this is uncontested by Defendant.

**The Mohan Declaration**

9. Mr. Sandeep Mohan is the General Manager of Plaintiff. His declaration sets forth the sequence of events that led to this proceeding to obtain security for the claims which will be asserted by Plaintiff in London arbitration as well as interest on the principal claim and the costs associated with the London arbitration proceedings. His declaration is

supported by 20 exhibits comprised of contemporaneous communications and documents as well as advices recently received from Plaintiff's agents at the discharge port of Mumbai, India (Messrs. Sahi Oretrans (Pvt.) Ltd.)("Sahi").

10. The Mohan Declaration completely contradicts disputed points sought to be made by Defendant.

11. For example, Defendant seems to imply that the vessel's failure to maintain her original estimated time of arrival ("ETA") at the discharge port of Mumbai was somehow tied to an alleged failure by Plaintiff to timely nominate the discharge port (see Declaration of Adam Russ dated October 1, 2007 ["Russ Declaration"] at ¶ 5).

12. The Mohan Declaration makes it clear there was no such failure by Plaintiff.

13. Mr. Mohan states that, on April 16, 2007, Transworld (who act as Plaintiff's agents in Brisbane, Australia) issued Voyage Instructions to the Master of the M/V Frederike Oldendorff (Mohan Declaration at ¶ 6 and Exhibit 2). This was a mere four days after the date of the charter party between Defendant and Plaintiff (Mohan Declaration at ¶ 5). The Voyage Instructions advised the Master that his vessel had been chartered to Plaintiff (Id. at ¶ 6). The Voyage Instructions further advised the Master that the vessel would load a cargo of peas at Vancouver, Canada and discharge all of the cargo at Mumbai and/or one other Indian port (Id.).

14. Mr. Mohan also states that, on May 16, 2007, Sahi advised the Master that Sahi would be the agents at Mumbai, indicated that all of the cargo aboard his vessel would be

discharged at Mumbai, and attached the pre-arrival information required to be provided by the vessel to the port of Mumbai (Mohan Declaration at ¶10 and Exhibit 4).

15. Mr. Mohan further states that, on May 22, 2007, VSBK (who act as managers for the actual owners of the vessel)(and who would have been in contact with the Master of the vessel) advised Sahi that the vessel's ETA at Mumbai was June 1, 2007 (Mohan Declaration at ¶ 11 and Exhibit 1).

16. Mr. Mohan further states that, on May 28, 2007, Plaintiff's agents at Singapore reminded the Master that Mumbai would be the discharge port and Sahi would be the agents at Mumbai (Mohan Declaration at ¶ 15 and Exhibit 6).

17. Mr. Mohan further states that, on May 30, 2007, in a communication to Plaintiff's agents at Singapore, the Master acknowledged that Mumbai would be the discharge port and confirmed receipt of the form for the pre-arrival information for the port of Mumbai that had been forwarded to him by Sahi on May 16, 2007 (Mohan Declaration at ¶ 16 and Exhibit 7).

18. In short, the Mohan Declaration makes it clear that the timeliness of the nomination of the discharge port by Plaintiff is a disputed point between the parties.

19. As another example, Defendant contends that the monsoon season commenced at Mumbai on May 25, 2007, and, as a result, Plaintiff never could have completed discharging operations at Mumbai prior to the commencement of the monsoon season (Russ Declaration at ¶¶ 12 and 14).

20. The Mohan Declaration completely contradicts this contention.

21. Mr. Mohan first reviews the sequence of events and Plaintiff's plans to discharge all of the cargo at the BFL outer anchorage at Mumbai prior to the arrival of the monsoon season (Mohan Declaration at ¶¶ 11-30). He then states that Plaintiff always planned to discharge the entire cargo at the BFL outer anchorage at Mumbai and that this plan would have worked if the vessel had maintained her original ETA of June 1, 2007 (or had arrived at Mumbai even as late as June 6, 2007)(Mohan Declaration at ¶ 48 and Exhibit 1 at ¶¶ 4 and 6). Mr. Mohan explains that the plan would have succeeded because the monsoon season at Mumbai, as confirmed both by the India Meteorological Department of the Government of India and Plaintiff's agents at Mumbai, did not start in 2007 until June 18, 2007 (Mohan Declaration at ¶ 48 and Exhibit 1 at ¶ 4).

22. Again, the Mohan Declaration makes it clear that the start date for the monsoon season at Mumbai and whether Plaintiff could have discharged the vessel prior to the commencement of the monsoon season are disputed points between the parties.

**The Blacker Declaration**

23. Mr. Blacker is a solicitor of the Supreme Court of England & Wales and submits his declaration in response primarily to the Declaration of Timothy Young dated October 2, 2007 ("Young Declaration"), an English Barrister retained on behalf of Defendant (Blacker Declaration at ¶ 1). Mr. Blacker, throughout his professional life, has specialised in international trade and shipping disputes with particular emphasis on disputes involving

the charter of vessels (Id.). Mr. Blacker has been involved in more than 100 London arbitration proceedings and has extensive knowledge of the procedure of maritime arbitrations in London, the assessment of costs and fees in relations to such proceedings and the rate of interest on awards made by London arbitrators (Id.).

24. The Blacker Declaration demonstrates that the points sought to be made by Defendant with regard to English law and procedure also are disputed.

25. For example, Mr. Young argues that under English law some of the claims advanced by Plaintiff would be unrecoverable due to being unforseeable (Young Declaration at ¶ 17).

26. Mr. Blacker disagrees. He reviews the disputed claims and the relevant English cases (Blacker Declaration at ¶¶ 14-28). He concludes as follows:

> I therefore disagree with Mr. Young that very significant elements of the quantum of the claim can be dismissed at this stage on the basis that they are excessive and not reasonably recoverable as a matter of English law (see paragraph 23 of his affidavit). Unless and until all the evidence is put to London arbitrators and the issues in dispute are decided by those arbitrators, none of the listed claims put forward by [Plaintiff] JKI can, in my view be excluded as a matter of principal under English law and Mr. Young's assumptions on the evidence are, with respect to him, mere speculation at this stage.

(Blacker Declaration at ¶ 29).

Accordingly, as noted by Mr. Blacker, none of Plaintiff's claims can be excluded as a matter of principal under English law.

27. As another example, Mr. Young argues that Plaintiff's estimate of the cost of the London arbitration proceedings ($500,000.00) is high (Young Declaration at ¶ 22).

28. Mr. Blacker again disagrees. He states that:

> Again with all due respect to Mr. Young, I am sure he will be the first to acknowledge that his experience in dealing with costs assessments and estimates is limited. A barrister in this country does not even negotiate his or her own fees. This is done between the barrister's clerk and the solicitor [who employs the barrister]. As a solicitor I deal on a daily basis with clients who request regular costs breakdowns and estimates and barrister's rarely deal direct with a client.

(Blacker Declaration at ¶ 30).

Mr. Blacker then goes on to state that Plaintiff's costs estimate of $500,000.00 is not a figure that can be seriously criticized and notes that in a case similar to this case he provided an estimate slightly higher than $500,000.00 which was not criticized (Blacker Declaration at ¶ 31).

29. As another example, Mr. Young argues that both the rate of interest (10.25% simple interest) and the period for which it is claimed (three years) are excessive (Young Declaration at ¶ 22).

30. Mr. Blacker again disagrees. He states that:

> ... [London] arbitrators do not award simple interest. They have the power to award a compound rate and in my experience of London maritime arbitrations they invariably do so. The rate is compounded with 3 monthly stops. So simple interest at 10.25% is higher (although not much higher) than the figure of 8% mentioned by Mr. Young because the latter will [be] compounded.

(Blacker Declaration at ¶ 32).

Mr. Blacker also notes that a period of three years is reasonable in view of the duration of similar cases he is handling in London arbitration, that the period covers not only the arbitration proceedings but any appeal proceedings, and that (most telling) Defendant itself used an estimate of three years in its prior Rule B attachment proceeding (Blacker Declaration at ¶ 33)(a copy of the Complaint in the prior proceedings is attached as Exhibit 3)(see Exhibit 3 at ¶ 11B).

34.  Plaintiff has satisfied the requirements set forth in the Aqua Stoli decision. Plaintiff and Defendant dispute both the facts and English law relating to the sequence of events and claims at issue and these disputes will have to be resolved in London arbitration. Therefore, Defendant's motion should be denied since it is without basis in fact or law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 19, 2007

/s/ Michael O. Hardison
Michael O. Hardison