# Hardison Declaration Exhibit 1

Michael O. Hardison (MH-0691)
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
J.K. INTERNATIONAL PTY. LTD.,

                Plaintiff,

    - against-

OLDENDORFF CARRIERS GMBH &
CO.,

                Defendant.
--------------------------------------------------------x

          07 Civ. 7328 (SHS)
           ECF CASE

   **VERIFIED COMPLAINT**
    **IN ADMIRALTY**

      Plaintiff, J.K. International Pty. Ltd., by its attorneys, Eaton & Van Winkle LLP, for

its complaint against Defendant, Oldendorff Carriers GmbH & Co., upon information and

belief, alleges as follows:

## JURISDICTION

    1.    This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is

an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of

Civil Procedure and Rule B of the Supplemental Rules For Certain Admiralty And Maritime

Claims.

## PARTIES

2.    At all relevant times, Plaintiff, J.K. International Pty. Ltd., was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at 49 Suscatand Street, Rocklea Qld 4106, Australia.

3.    At all relevant times, Defendant, Oldendorff Carriers GmbH & Co., was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at Willy-Brandt-Allee 6, D-23554 Lubeck, Germany.

## UNDERLYING EVENTS

4.    On or about April 12, 2007, Defendant, as Owner of the M/V FREDERIKE OLDENDORFF, entered into a maritime contract of charter party with Plaintiff, in which Defendant agreed to let the M/V FREDERIKE OLDENDORFF to Plaintiff for one time charter trip duration of about 65-70 days.

5.    On or about April 30, 2007, the vessel loaded a cargo of Canadian Yellow Peas in bulk for carriage from Vancouver, Canada to Mumbai, India.

6.    On or about June 2-4, 2007, while on the voyage to India, the vessel's engine exhaust temperatures rose indicating major engine problems and eventually (after various stops) the main and auxiliary engines broke down and forced the vessel to anchor on June 12, 2007.

7.    Defendant thereupon entered into a contract to salvage the vessel and declared general average.

8.    On or about June 15, 2007, the vessel was towed to Mundra, India for repairs and arrived at Mundra on June 17, 2007.

9.    The monsoon season commenced in India on June 18, 2007.

10.    The Master of the M/V FREDERIKE OLDENDORFF demanded that part of the cargo be discharged at Mundra because of concerns he had regarding the vessel's draft.

11.    The Master of the M/V FREDERIKE OLDENDORFF also insisted that some of the cargo be put in bags in order to improve the stability of the vessel.

12.    Plaintiff, as a result, incurred unanticipated expenses including port charges, expenses to lighten the vessel, expenses to bag cargo and expenses to transport the discharged cargo by rail from Mundra to Mumbai.

13.    The vessel then proceeded to Mumbai, where she arrived on or about July 7, 2007, although her original estimated time of arrival had been on or about June 2, 2007, which would have permitted discharge of the cargo prior to the onset of the monsoon season.

14.    Plaintiff had arranged to discharge the cargo into barges at an anchorage but due to the onset of the monsoon season the port no longer permitted this method of discharge.

15.    Plaintiff was required instead to direct the vessel to a berth in order to discharge the cargo.

16.    Plaintiff, as a result, incurred unanticipated expenses at Mumbai, including port charges that would not have been incurred if the cargo had been discharged into barges at an anchorage.

17.    The barge operator, as a further result, claimed against Plaintiff for breach of the contract to discharge the cargo into barges.

18.    The cargo receivers, because of the delayed delivery of the cargo attributable to the problems and eventual breakdown of the vessel's engines, also claimed against Plaintiff for late delivery of the cargo.

## CAUSE OF ACTION

19.    Paragraphs 1-18 of this Complaint are repeated and realleged as if the same were set forth here at length.

20.    Defendant breached the charter party entered into between Defendant and Plaintiff by failing to provide a vessel in a thoroughly efficient state in cargo spaces, hull, machinery and equipment for and during the service covered by the charter party and by failing to prosecute the voyage with the utmost despatch.

21.    Plaintiff has duly performed all obligations owed to Defendant under the terms of the charter party.

22.    Plaintiff, by reason of the premises, has sustained damages and expects to sustain additional damages, as best as can now be estimated, in the amount of $3,230,009.89.

23.    The charter party provides that all disputes between the parties are to be resolved by arbitration in London pursuant to English law.

24.    This action is brought to obtain jurisdiction over Defendant and to obtain security in favor of Plaintiff in respect of its claim against Defendant and in aid of London arbitration proceedings.

25.    This action also is brought to obtain security for additional sums to cover Plaintiff's anticipated costs in the arbitration and interest, all of which are recoverable under English law and the rules applicable to London arbitration.

26.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, inter alia, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant ("Assets"), including but not limited to Assets at, being transferred through, or being transferred and/or wired to or from various banking institutions and/or other business entities.

27    The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff against Defendant includes: (i) principal claim in the amount of $3,230,009.89; (ii) interest, which is recoverable in London arbitration, at the rate of 10.25% for three years, the estimated time it will take to

obtain a final arbitration award, in the amount of $993,228.03 and (iii) estimated attorneys'

fees and disbursements, together with the costs of the arbitration, including arbitrators fees,

all of which are recoverable in London arbitration, in the amount of $500,000.00, for a total

claim of $4,723,237.92

## RESERVATION OF RIGHT
## TO ARBITRATE DISPUTES WITH DEFENDANT

28.    The charter party provides that any disputes between Plaintiff and Defendant

are to be arbitrated in London pursuant to English law.

29.    Plaintiff expressly reserves the right to arbitrate the merits of its dispute with

Defendant and brings this action solely to obtain quasi-in-rem jurisdiction and security for

its damages, interest and the costs of London arbitration.

WHEREFORE, Plaintiff prays as follows;

1.    That process in due form of law according to the practice of this Court may issue

against Defendant;

2.    That the Court, in accordance with the provisions of Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, direct the issuance of Process of Maritime

Attachment and Garnishment attaching all assets within the district owned by Defendant or

in which Defendant has a beneficial interest up to the amount of $4,723,237.92;

3.    That judgment be entered against Defendant and in favor of Plaintiff in the

amount of $4,723,237.92, plus interest, costs, and attorneys' fees; and

4.    That the Court grant such other, further and different relief as may be just, proper

and equitable in the premises.

Dated: New York, New York
       August 16, 2007


EATON & VAN WINKLE LLP


By:    /s/ Michael O. Hardison
       Michael O. Hardison (MH-0691)

       3 Park Avenue
       New York, New York 10016-2078
       (212) 779-9910

       Attorneys for Plaintiff

## VERIFICATION

MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.    I am a member of the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2.    I have read the foregoing complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.  The sources of my information and the grounds for my belief are communications received from the Plaintiff and the London solicitors for Plaintiff and an examination of the papers relating to the matters in suit.

3.    The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this district.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        August 16, 2007

/s/ Michael O. Hardison
Michael O. Hardison (MH-0691)

-8-

## **DECLARATION**

MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.      I am a member of the firm of Eaton & Van Winkle LLP, attorneys for plaintiff, and I am familiar with the facts of this matter.

2.      I execute this declaration in compliance with the provisions of Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims.

3.      To the best of my information and belief, Defendant, Oldendorff Carriers GmbH & Co., cannot be found within this District as defined by the relevant State and Federal Rules of Civil Procedure.

4.      I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database.  This database contained no record of Defendant being either a New York corporation or a foreign corporation licensed to do business in New York.

5.      I also checked the internet telephone directories for New York state and contacted the telephone information operator regarding a listing for Defendant.  None of these sources contained a listing for Defendant.

6.      I am unaware of any general or managing agents within this District for Defendant.

7.      It is for the foregoing reasons that I request, on behalf of Plaintiff, that the Court execute the accompanying Order For Issuance of Process of Maritime Attachment and Garnishment.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
          August 16, 2007


                                        /s/ Michael O. Hardison
                                        Michael O. Hardison (MH-0691)


-10-