Michael O. Hardison (MH-0691)
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-2078
(212) 779-9910

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
J.K. INTERNATIONAL PTY. LTD.,

                Plaintiff,              07 Civ. 7328 (SHS)
                                  ECF CASE

    - against-

OLDENDORFF CARRIERS GMBH &
CO.,                             **MOHAN DECLARATION**

               Defendant.
----------------------------------------------------------x

SANDEEP MOHAN, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

    1.   I am the General Manager of Plaintiff, J.K. International Pty. Ltd. ("JKI"), which has an office located at 49 Suscatand Street, Rocklea Qld 4106, Australia. I have worked for JKI and occupied my present position for fourteen years. I am accordingly authorised by JKI to make this declaration.

    2.   I make this declaration in support of the attachment of the assets of Defendant, Oldendorff Carriers GmbH & Co. ("Oldendorff"), in the amount of $4,723,237.92 as security for the claims of JKI, which are subject to London arbitration, plus interest and the costs of the arbitration.

3.    The contents of this declaration, save where otherwise stated, are derived from my own personal knowledge.  The contents are true to the best of my knowledge and belief. I am familiar with the facts set forth in this declaration.

4.    I also rely upon advices received from Mr. Narayan Nethrakere at Sahi Oretrans (Pvt) Ltd. ("Sahi") in Mumbai, India (a copy of the advices ["Sahi Email"] is attached as Exhibit 1).  Transworld Marine Express Pty. Ltd. ("Transworld")(who act as JKI's agents in Brisbane, Australia), appointed Sahi to act as JKI's agents in Mumbai, India. Mr. Nethrakere is the General Manager of Sahi.

5.    On April 12, 2007, Oldendorff, acting as owners of the M/V FREDERIKE OLDENDORFF, entered into a charter party with JKI, acting as charterers of the vessel, in which Oldendorff agreed to let the vessel to JKI for one time charter trip.

6.    On April 16, 2007, Transworld issued Voyage Instructions to the Master of the M/V FREDERIKE OLDENDORFF (a copy of the Voyage Instructions is attached as Exhibit 2). The Voyage Instructions advised the Master that his vessel had been chartered to JKI for one time charter trip of about 65-70 days without guarantee (Exhibit 2 at ¶ 2).  The Voyage Instructions further advised the Master that the vessel would load a cargo of peas at Vancouver, Canada and discharge all cargo at Mumbai and/or one other Indian port (Exhibit 2 at ¶ 2 and Page 3).

7.    The vessel subsequently loaded a cargo of Canadian Yellow Peas in bulk for carriage from Vancouver, Canada to India.

8.    On April 30, 2007, Vancouver/India B/L Nos. 1-7 (which covered 46,918.298

–2–



M/T of peas) were issued at Vancouver, Canada, confirming receipt of the cargo and carriage from Vancouver to India (copies of the bills of lading issued at Vancouver are attached as Exhibit 3).

9.    JKI subsequently sold all of the cargo that had been loaded aboard the vessel at Vancouver, Canada, to four different receivers at Mumbai, India.

10.    On May 16, 2007, Sahi advised the Master of the M/V FREDERIKE OLDENDORFF that Sahi would be the agents at Mumbai and indicated that all of the cargo aboard his vessel would be discharged at Mumbai, India (a copy of this communication is attached as Exhibit 4).

11.    On May 22, 2007, VBSK (who I am advised act as managers for the actual owners of the M/V FREDERIKE OLDENDORFF)(see Exhibit 1 [Sahi Email] at ¶ 2) advised Sahi (JKI's agents at Mumbai) that the estimated time of arrival ("ETA") of the vessel at Mumbai would be June 1, 2007 (see Exhibit 1 [Sahi Email] at First Attachment).

12.    As it was commonly known in the trade, JKI knew that the monsoon season at Mumbai was forecast to commence around the middle of June in 2007, but this did not present a problem given the vessel's ETA because, based on past experience with similar sized vessels at Mumbai, JKI planned and programmed to discharge the cargo in about 7 days.

13.    On May 26, 2007, JKI, through its agents at Mumbai, applied to the Mumbai Port Trust for permission to discharge the entire cargo into barges at the BFL outer



anchorage for onward transport on the barges to a berth at the port as was done in the case of earlier vessels (a copy of the application to the Mumbai Port Trust is attached as Exhibit 5).

14.    The Mumbai Port Trust granted the application (Exhibit 1 at ¶ 3).

15.    On May 28, 2007, JKI's agents in Singapore reminded the Master of the M/V FREDERIKE OLDENDORFF that Mumbai would be the discharge port and Sahi would be the agents at Mumbai (a copy of this communication is attached as Exhibit 6).

16.    On May 30, 2007, in a communication to JKI's agents at Singapore, the Master of the M/V FREDERIKE OLDENDORFF acknowledged that Mumbai would be the discharge port and confirmed receipt of the pre-arrival information for the port of Mumbai which had been forwarded to him by Sahi on May 16, 2007 (Exhibit 7).

17.    Sahi received the first ETA advice from the vessel on May 31, 2007, which indicated the vessel expected to arrive at Mumbai on June 6, 2007 (Exhibit 1 at ¶ 6).

18.    Sahi as Port Agents liased with the Master regarding drafts and quantities for discharging and other arrival formalities (Id.).

19.    On or about May 31, 2007, with the permission of the actual owners of the M/V OLDENDORFF, Vancouver/India B/L Nos. 1-7 (which covered 46,918.298 M/T of peas) were cancelled and replaced by Vancouver/Mumbai B/L Nos. 1-10 (which covered 46,918.298 M/T of peas) indicating that all of the cargo was loaded in Vancouver, Canada, for discharge at Mumbai, India (copies of the cancelled bills of lading are attached as Exhibit 8)(copies of the Vancouver/Mumbai bills of lading are attached as Exhibit 9).

20.    On June 1, 2007, the Master advised Sahi that the vessel's ETA was still June

–4–



6, 2007 (Exhibit 1 at ¶ 6).

    21.    On June 2, 2007, JKI entered into a contract with United Shippers Limited to cover the barging of the cargo from the M/V FREDERIKE OLDENDORFF and discharging of the cargo at a berth at Indira Dock at Mumbai (a copy of the barging contract is attached as Exhibit 10).

    22.    Meanwhile, Oldendorff was fully aware that all of the cargo aboard the M/V FREDERIKE OLDENDORFF was to be discharged at Mumbai as demonstrated by Oldendorff's letter to the actual owners of the vessel, dated June 4, 2007, which referenced Vancouver/Mumbai B/L Nos. 1-10 and agreed to indemnify the actual owners for delivering the cargo at Mumbai without production of the original bills of lading (a copy of Oldendorff's letter is attached as Exhibit 11).

    23.    On June 3 and 4, 2007, the Master advised Sahi that the vessel's ETA was June 7, 2007 (Exhibit 1 at ¶ 6).

    24.    Sahi then advised the Master that the vessel might be diverted to Kandla, India, to discharge part of the cargo in order to return to Mumbai with an arrival draft of 10.5 Meters but the Master advised Sahi that this would not be possible because he did not consider Kandla to be a safe port for his vessel (Id.).

    25.    At this point in time, JKI had neither decided nor instructed anyone to divert the vessel but was simply trying to obtain information about the discharge possibilities and implications in view of the vessel's delayed ETA and possible further delay (see also Exhibit 1 at ¶ 6).



26.   On June 4, 2007, Sahi filed an Import Manifest with Mumbai Customs for all of the cargo being carried aboard the M/V FREDERIKE OLDENDORFF (Exhibit 1 at ¶ 5 and second attachment).

27.   On June 5, 2007, the Master advised Sahi that the vessel's ETA was June 8, 2007 (Id. at ¶ 6).

28.   One June 6, 2007, the Master advised Sahi that the vessel was proceeding at a reduced speed of 6 knots due to main engine trouble and the vessel's ETA at Mumbai was now June 10, 2007 (Id. at last attachment).

29.   This advice presented a problem for JKI because JKI knew from information received from Sahi that the Mumbai Port Trust prohibited discharge into barges at the BFL outer anchorage once the monsoon season commenced and the draft of the M/V FREDERIKE OLDENDORFF precluded discharge at the inner harbour or a berth at Indira Dock at Mumbai.

30.   JKI had no choice at this point but to send the vessel to another port to discharge part of the cargo to lessen her draft so that she could call at Mumbai to discharge the remaining cargo at the inner harbour at Mumbai.

31.   On or about June 8, 2007, JKI directed the vessel to proceed to Mundra, India, in order to discharge enough cargo to enable the vessel to meet the draft restriction at the inner harbour at Mumbai.

32.   The vessel, up to this point in time, was on a heading for Mumbai as confirmed by extracts from the vessel's Deck Log which JKI obtained from the actual owners of the



vessel (a copy of the extracts from the vessel's Deck Log is attached as Exhibit 12).

33.    JKI learned subsequently that the vessel suffered a total breakdown of her engines on June 12, 2007, and had to be towed to Mundra for repairs, where she arrived on June 17, 2007.

34.    The Master of the vessel calculated that the vessel would need to discharge about 7,200 M/T of cargo at Mundra in order for the vessel to meet the draft restriction at the inner harbour when she returned to Mumbai.

35.    The quantities of cargo covered by the Vancouver/Mumbai B/L Nos. 2, 8 and 9 were eliminated or adjusted and two new bills of lading (Vancouver/Mundra B/L Nos. 2 and 11) were issued to reflect a voyage from Vancouver to Mundra and discharge of 7,286.996 M/T of cargo at Mundra (copies of the revised Vancouver/Mumbai bills of lading and the newly issued Vancouver/Mundra bills of lading are attached as Exhibit 13).

36.    The cargo discharged at Mundra was subsequently transported by rail to Mumbai which caused JKI to incur the unanticipated expense of the rail transport in the amount of $182,401.94 (Indian Rupees 7,432,879.00 @ $40.75)(copies of the invoices related to the rail transport from Mundra to Mumbai are attached as Exhibit 14).

37.    The Master of the M/V FREDERIKE OLDENDORFF, subsequent to the discharge of part of the cargo at Mundra, required that some of the cargo that remained aboard the vessel be placed in bags in order to improve the stability of the vessel which caused JKI to incur the unanticipated expense of bagging the cargo in the amount of $8,547.63 (Indian Rupees 348,316.00 @ $40.75)(a copy of the bagging invoice is attached as



Exhibit 15).

38.    JKI also incurred the unanticipated expense of the charges in the amount of $205,514.48 (Indian Rupees 8,374,715.00 @ $40.75) imposed by the Mundra Port and Special Economic Zone to discharge at Mundra (copies of the invoices covering the Mundra port costs are attached as Exhibit 16).

39.    The vessel arrived at Mumbai on July 18, 2007, and commenced discharge at the inner harbour on July 22, 2007.

40.    JKI's agents at Mumbai estimated the time to discharge the cargo remaining on board to be 20 days (vessels cannot discharge as fast at the inner harbour as they can at the BFL outer anchorage) and estimated the port charges for discharging at the inner harbour at Mumbai (based on a discharging time of 20 days) to be $126,125.00 (which expense JKI would not have incurred if the vessel had discharged the cargo into barges at the BFL outer anchorage)(a copy of the estimate provided by the agents is attached as Exhibit 17)(see also Exhibit 1 at ¶ 4).

41.    I must note at this point that during discharging operations it was discovered that one of the holds contained cargo that was damaged by water and required segregation (which could only be done during day light hours) which delayed the completion of discharge and will increase the port costs at Mumbai.

42.    I also must note that the delays associated with the deviation of the vessel to Mundra, discharging and bagging operations at Mundra, the voyage from Mundra to Mumbai, waiting time at Mumbai due to the refusal of the Master to go to the nominated

anchorage, and time taken to discharge at Mumbai up to August 8, 2007 cost JKI lost time of about 31 days in the amount of $1,073,850.00.

43.    The inability to discharge the cargo into barges at the BFL outer anchorage due to the delayed arrival of the vessel and the onset of the monsoon season at Mumbai also led United Shippers Limited to assert that JKI breached the barging contract and to present a claim against JKI in the amount of $291,533.74 (Indian Rupees 11,880,000.00 @ $40.75)(a copy of the claim is attached as Exhibit 18).

44.    The claim by United Shippers Limited is subject to New Delhi arbitration and Indian law (Exhibit 8 at ¶ 11).

45.    The delayed delivery of the cargo also caused three of the cargo receivers to assert claims against JKI (Shadiram & Sons - 7,286.996 M/T @ $35.00; Poona Dal and Oil Industries Ltd. - 3,021.302 M/T @ $38.00; and Sharp Menthol India Limited - 5,110.00 M/T @ $38.00) and JKI anticipates receiving a claim from the fourth receiver (MMTC Ltd. - 31,500 M/T @ $38.00) in the total amount of $1,761,034.34 (copies of the claims by the receivers are attached as Exhibit 19).

46.    The claims by the receivers are also subject to Indian law under the terms of the sale contracts.

47.    JKI, as a result of all of the foregoing, has been exposed to damages in the total amount of $3,649,007.13 which it will seek to recover in London arbitration with Oldendorff, plus interest and the costs of the arbitration, and for which it seeks security in this proceeding in the amount of $4,723,237.92.



48.    I must emphasize that JKI always planned to discharge the entire cargo aboard the M/V FREDERIKE OLDENDORFF at the BFL outer anchorage at Mumbai. JKI's plan would have worked if the vessel had maintained her original ETA of June 1, 2007 (or had arrived at Mumbai even as late as June 6, 2007 (Exhibit 1 at ¶¶ 4 and 6). This is because the monsoon season at Mumbai, as confirmed both by the India Meteorological Department of the Government of India and JKI's agents at Mumbai, did not commence in 2007 until June 18, 2007 (a copy of the advice received from the India Meteorological Department is attached as Exhibit 20)(see also Exhibit 1 at ¶ 4).

49.    Finally, I am aware that Oldendorff commenced a proceeding in New York against JKI on or about July 17, 2007, received security for its claims during the course of the proceeding, dismissed the proceeding on or about July 27, 2007, and now asserts that JKI should have asserted its claims in the proceeding while it was pending. This was not possible. JKI had received information related to a few expenses and one claim prior to or during the pendency of the proceeding commenced by Oldendorff (see Exhibits 14 and 16). However, at that time, JKI anticipated additional claims and expenses for which information did not become available until after the proceeding commenced by Oldendorff was dismissed (see Exhibits 12, 13, 15 and 17). Accordingly, it simply was not possible for JKI to assert its claims while the proceeding commenced by Oldendorff was pending because JKI lacked the information necessary to do so.

50.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

–10–



Dated:     12 th November, 2007


Sandeep Mohan