LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
OLDENDORFF CARRIERS GMBH & CO.
The Gray Bar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Kevin J. Lennon
Patrick F. Lennon

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
J.K. INTERNATIONAL PTY. LTD.,   :  07 Civ. 7328 (SHS)
             :
      Plaintiff,  :  ECF CASE
             :
 - against -       :
             :
OLDENDORFF CARRIERS GMBH & CO., :
             :
      Defendant. :
-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO VACATE MARITIME ATTACHMENT

**POINT I**

**JKI'S ATTACHMENT SHOULD BE VACATED AS ITS CLAIMS LACK ANY MERIT**

A.    <u>The Vessel Could Not Discharge into Barges at the Mumbai Outer Anchorage</u>

Central to JKI's claims is its assertion that but for Oldendorff's breach, it could have carried out cargo lightening at Mumbai in advance of the monsoon season. JKI asserts that it would thereby have avoided the delay and damages it claims to have incurred. However, for the reasons that follow, JKI could never have discharged cargo into barges at the Mumbai outer anchorage at the time in question.

    i.    <u>Discharge at the Mumbai outer anchorage is not allowed during monsoon season</u>

As shown by the supporting Declaration of Vaman Prabhu ("Prabhu Decl."), limitations on the ability of barges to "ply" (i.e., work) the outer anchorage at the port of Mumbai are predicated on the monsoon season. (Prabhu Decl. at ¶¶ 4–5). The Southwest monsoon season that affects Mumbai port operations commences on May 26 and lasts until August 31. (Id. at ¶5). This is not to be confused with the monsoon itself (as intended by JKI which incorrectly avers the "monsoon season" began on June 18 – citing an India Meteorological Department report regarding the onset date of "monsoon over Mumbai" (not monsoon season) (see Declaration of Andrew Mohan at ¶48, Ex. 20) ("Mohan Decl.). Further, the monsoon itself actually began 10 days earlier than normal at Mumbai in 2007! (Prabhu Decl. at ¶4, Ex. 1). It is the monsoon season, and the monsoon itself, for the Mumbai Port Trust limitations. (Id. at ¶6). JKI concedes the point where Mr. Mohan states "… JKI *knew* from … that the Mumbai Port Trust *prohibited discharge* into barges at the BFL outer anchorage **once the monsoon season commcenced** …" (Mohan Decl. at ¶29) (emphasis added).

Since the earliest that the M/V Frederick Oldendorff would have arrived at Mumbai was

2

June 1, 2007[1], this was beyond the time period in which JKI could ever have performed cargo

lightening at the Mumbai outer anchorage. Hence, its claims against Oldendorff based even on a

vessel arrival date of June 1, 2007 must fail.

> ii.    JKI Did Not Have Necessary Permissions to Lighten Cargo

JKI does not show it had the required permissions from the Mumbai Port Trust to discharge

at the outer anchorage. This speaks to the inadequacy of its claims. As explained by Mr. Prabhu,

based on his significant experience at the port of Mumbai, there are three permissions[2] that must be

obtained to discharge at the outer anchorage. (Prabhu Decl. ¶7). In contrast to the series of

permission recently obtained for a vessel discharging at the Mumbai outer anchorage *after* the

monsoon season, JKI has submitted tot his Court only a permission it apparently obtained from

Customs. (Id., Ex. 12). JKI has not shown the other required permits and thus was could not have

discharged as it claims.

> iii.    Barges May Not Ply the Mumbai Outer Anchorage during Monsoon Season

JKI's contention about discharging at the outer anchorage is further undermined since such

operations at the outer anchorage require barges to have a "certificate of survey" authorizing them

to ply the outer anchorage at the relevant time. (Id. ¶5). However, such operations are not allowed

during the foul weather season. This issue was raised in Oldendorff initial papers. (Declaration of

Adam Russ at ¶¶ 12 -13, Exhibits 6 – 7). That JKI did not comment on this evidence demonstrates

its inability to show otherwise. If JKI were correct it could have submitted copies of (a) required

permissions obtained from the relevant authorities and (b) certificates of survey for the barges to be

employed by United Shippers Limited (Prabhu Decl., Ex. 10). It did not do so. It is very telling

---

[1] Mohan Decl at ¶11, Ex. 1.
[2] Deputy Conservator, Deputy Docks Manager and Deputy Commissioner of Customs.

that neither Mr. Mohan, nor JKI's agent, Narayan Nethrakere[3] upon whose "comments" (Mohan Decl, Ex. 1) Mr. Mohan relies, actually say state JKI had barges at the ready. Rather, Mr. Nethrakere simply says "Barges would have been available at Mumbai after 267-May-2007." (Id., Ex. 1 at ¶7).

Barges, in the general sense, are likely available year round at Mumbai. It is axiomatic that had JKI not overloaded the vessel with cargo (which is why she could not enter the inner harbour) that despite the main engine issues, she could have been towed into Mumbai (as she was towed to Mundra (Id. at ¶34)) and discharged if she had a draft of less then 10.5 meters. However, JKI saying "barges would have been available" does not equate with a showing that it had the requisite permissions, plus available barges with lawful licenses, to carry out discharge at the Mumbai outer anchorage during the monsoon season. As shown by Mr. Prabhu, this was not possible. Hence, JKI's claims against Oldendorff must fail.

B.    JKI's Claims are Unrecoverable Under English Law and Improper for Rule B

i.    Even if JKI's Facts are Conceded, its Claims Are Unrecoverable under English Law

Timothy Young's Second Declaration ("2nd Young Decl.") further shows that JKI's alleged damages are unrecoverable as a matter of English law. Mr. Young, having assumed that what JKI says is true, renders the following statements regarding the impact of English law on JKI's claims.

- Legal authorities referred to in his initial Declaration are not addressed by JKI. These decisions stand for the proposition that a vessel Master has discretion in carrying out orders and JKI has submitted no evidence showing the master wrongly refused a lawful order. (2nd Young Decl. at ¶ 8). JKI's claim for lost time thus fails;
- The barge operator (USL) claim is seven (7) times greater than that stated in the alleged contract with JKI; the contract does not provide services for cargo lightening at the outer anchorage; there is no offset for USL's mitigation; the *force majeure* clause exonerates JKI from any liability; JKI could have used USL's services when the vessel returned to Mumbai; the contract's performance date of June 15, 2007 is a mere 3 days before monsoon was over Mumbai and beyond when JKI says it would

---

[3] Mr. Nethrekere's experience and qualifications to provide any information to Mr. Mohan, or by extension, to this Court, is an unknown quantity.    4

have performed cargo lightening; there is no minimum quantity of cargo to be discharged in the USL contract. As USL's claimed damages have no substance an English arbitration tribunal would find JKI not liable to USL. (Id. at ¶¶ 9 – 10).

- JKI has not provided copies of its sales contracts for the cargo receiver "delay" claims although the dates of the alleged contracts are critical since JKI's case is premised on timing. All three claim documents (Mohan Decl., Ex. 19) refer to the sales as having been on c.i.f. terms. A "c.i.f." contract is one for sale performable by the transfer by the seller of documents. The c.i.f. seller (i.e., JKI) must acquire the goods, secure a contract of carriage, ship the goods, obtain a bill of lading from the carrier, insure the goods, and then deliver to the buyer an invoice. The buyer (i.e., JKI's cargo receivers) and acquire rights against the carrier. The seller has *no obligations* to the buyer in respect of those risks. Delay in delivery is entirely a matter between the buyer and the carrier under the bill of lading. Such a claim for damages is too remote as matter of English law [absent special knowledge as per <u>Hadley v Baxendale</u> and JKI has submitted no such evidence] The English arbitral tribunal would deny the claims since recovery is "impossible." This is especially so for the MMTC Ltd. claim that has not been made and where JKI has not suffered any loss or damage for this "anticipated" claim. (2nd Young Decl. at ¶¶ 11 - 12).

Because Oldendorff has shown that JKI's claims, even where its facts are conceded, are not recoverable under the English law, this Court should vacate JKI's attachment.

    ii.    <u>JKI's Claims are Improper for Rule B</u>

JKI's claims are as follows:

- **Rail costs** ($182,401.94) (Mohan Decl., Ex.14). As per the above, the vessel could never discharge at Mumbai without cargo lightening and these costs to transport cargo to Mumbai would have been incurred in any event. Further, these documents appear to address cargo carried under bills of lading 2 and 11 that was bound for Mundra (Id., Ex. 13). Hence, since the cargo was delivered as reflected by the bills of lading (*cf.* all other bills of lading) there can be no liability in connection with this cargo (2nd Young Decl. at ¶11(a)).
- **Cargo bagging** ($8,547.63) (Mohan Decl. Ex. 15) / Mundra charges - $205,514.48 (Mohan Decl. Ex. 16). As per the rail costs above, these charges would have been incurred in any event. Further, these invoices are respectively dated August 7, 2007 and July 24, 2007 when the Oldendorff attachment was still pending. (see Point II *infra*);
- **Inner harbour discharge** ($126,125) (Id., Ex. 17). As per the rail costs and cargo bagging costs, these costs would have been incurred in any event. Further, this is a mere estimate (Id. at ¶ 40, Ex. 17) and should be rejected;
- **Lost time** ($1,073,850) (Id. at ¶ 42). JKI does not clarify the period on which the 31 days of lost time is based. If this subsumes the 26.95444 days that JKI unlawfully withheld hire, for which Oldendorff filed its maritime attachment and

was provided an LOU as substitute security (see Exhibit 1 attached hereto), then a significant portion of the claimed sum of US$1,073,850.00 has already been secured by JKI by virtue of its unlawfully withheld hire. Hence, this is nothing more than an unlawful end run of Oldendorff's security for JKI's breach of the charter party obligation to pay hire!;

- **Barge costs** ($201,533.74) (Id., Ex. 18).  As more fully explained by the Second Declaration of Timothy Young, *supra*, is troubling in numerous respects and is nothing more than an indemnity claim improper for Rule (see discussion *infra* re cargo receiver claims for delayed delivery);

- **Delayed delivery** ($1,761,034.34) (Id. Ex. 19) Timothy Young explains why these damages are unrecoverable as a matter of English law.  (2nd Young Decl. at ¶¶ 11 – 12).  Each of these claims is nothing more than wholesale speculative cargo indemnity claims which are improper for Rule B attachments.

Rule B attachment is not appropriate to secure unripe indemnity claims.  See <u>Bottiglieri di Navigazione SpA v. Tradeline LLC</u>, 2007 AMC 1013, 1016 (S.D.N.Y. 2007); <u>JK Int'l Pty, Ltd. v. Agriko S.A.S.</u>, 2007 AMC 783, 787 (S.D.N.Y. 2007) (JKI's Rule B security claim was vacated since it was for an unripe indemnity); and <u>Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.</u>, 2007 A.M.C. 1018, 1027 (S.D.N.Y. 2007).  JKI has not even produced copies of the alleged sales contracts and the greatest of asserted cargo receiver delay claims (MMTC Ltd.) is supported by nary an invoice!  Finally, although the MMTC claim has not even been presented, although half a year post discharge, JKI apparently had no compunction in asserting indemnity for this claim which it clearly has not even received the claim which it self-styles being "anticipated" (Mohan Decl. at ¶ 45).  Based on the above, and because JKI's claims are too remote, speculative, contingent and/or frivolous, its attachment should be vacated[4].

## POINT II

## JKI'S COMPULSORY COUNTERCLAIMS SHOULD HAVE BEEN ASSERTED IN OLDENDORFF'S MARITIME ATTACHMENT ACTION

---

[4] As JKI's claims should have been brought as counterclaims, this Court's recent decision in <u>North Offshore AS v. Rolv Berg Drive As</u>, 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y. 2007) is particularly relevant since JKI's claims have no merit and, hence, no security should be afforded.

JKI strains credulity by alleging that *prior to it becoming aware* of its claims that

Oldendorff commenced, and then dismissed, its own attachment and thus it could not have

interposed its claims therein. (JKI Memorandum of Law at 15) (emphasis added). This is belied by

the fact JKI itself knew of its alleged exposure at the time of the events giving rise to this litigation.

(Mohan Decl. at ¶25, Ex. 1 at ¶6 (JKI trying to obtain information about discharge possibilities and

*implications in view of the vessel's delayed ETA and possible further delay*)) (emphasis added).

JKI even concedes that it "... *had received information related to a few expenses and one claim*

*prior to or during the pendency of the proceeding commenced by Oldendorff*." (Mohan Decl. at

¶49) (emphasis added).

JKI's assertion is also further belied by the language of the Charterer's Club July 27, 2007

Letter of Undertaking ("LOU") provided to Oldendorff as substitute security in exchange for the

dismissal of its attachment. (Exhibit 1). To wit, the LOU provides:

> This Letter of Undertaking is given without prejudice to the rights of JKI to seek security
> from you in respect of *JKI'S claims and/or counterclaims.*

> This Letter of Undertaking is given without prejudice to all rights and defences of
> whatsoever which may be available to JKI including but not limited to rights to *claim
> damages and/or off-hire and/or make any counterclaim under the terms of the above
> Charterparty.*

(Exhibit 1) (emphasis added). Thus, JKI clearly appreciated its own alleged claims and/or

counterclaims arising from the events giving rise to this litigation. JKI cannot logically argue to the

contrary.

The non-maritime / non Rule B cases cited by JKI as standing for the proposition that it was

not required to assert its counterclaim in Oldendorff's attachment action are distinguishable. In

Mutual Fire, Marine and Inland Insurance Co. v. Adler, 726 F. Supp. 478 (S.D.N.Y. 1989) the

Court held an intervenor claim was not barred for failure to answer in a prior related action where

7

that prior action was dismissed with prejudice prior to the time that the intervenor would have been required to file an answer. Of course, in a maritime attachment action filed as an ancillary matter in aid of substantive proceedings, as was the Oldendorff action and as is the JKI action, there never arises any obligation for a Defendant to answer unless, and until, the proceedings reach the stage of enforcement of the foreign award. Thus JKI's reliance is misplaced on the <u>Mutual Marine</u> decision. This decision does, however, note that "[T]o hold otherwise … would not serve the policy underlying the doctrines of *res judicata* and collateral estoppel: to ***conserve judicial resources***." <u>Mutual Marine</u>, 726 F. Supp at 483. Here, by failing to interpose its counterclaim within the Oldendorff attachment, JKI has multiplied proceedings and squandered judicial resources.

<u>Cargill v. Sabine Trading & Shipping Co.</u>, 756 F.2d 224 (2d Cir. 1985) is cited by JKI as support for its proposition that parties in suits initiated by attachments are not required to file compulsory counterclaims. In <u>Cargill</u> the plaintiff obtained an ex parte attachment pursuant to New York state law (as per Fed. R. Civ. P. 64) and invoked the Court's jurisdiction not under Rule B but under diversity jurisdiction.

The <u>Cargill</u> case is thus completely inapposite to the facts and jurisdictional underpinnings of maritime attachments at stake here. The parties' respective Complaints filed in support of the respective attachments (Michael Hardison Declaration, Exhibits. 1 and 3) provide that the substantive claims have always been subject to resolution at London arbitration. Thus, while Fed R. Civ. P. 13(a)(2) was created to allow defendants to refrain from asserting a counterclaim ***if it would*** subject them to in personam jurisdiction, such submission of personal jurisdiction, which JKI obviously voluntarily submitted in this very same Court just 9 days after Oldendorff's dismissal, was never of any relevance since the (non-existent) merits of JKI's claims can only be decided at London arbitration! Thus understood, JKI's required compulsory counterclaim falls within the

8

sweep of Fed. R. Civ. P. 13(a), and not within the exception afforded by Rule 13(a)(2), since the merits of its claims are not at stake in this jurisdiction.  Cargill affords no protection for JKI.

Old Hickory Barge and Fleeting, Inc. v. Barge M-553, 107 F.R.D. 689, 1986 AMC 1215 (M.D. La. 1985), although cited by JKI as an "authority", is obviously not binding on this Court.  In Old Hickory Barge the plaintiff argued that defendant's counterclaim was permissive, not compulsory, and that in the absence of any independent basis for subject matter jurisdiction, the counterclaim should be dismissed.  This is, of course, the polar opposite of that which Oldendorff is arguing here.  Notwithstanding this strident dissimilarity, the truly essential distinction is that Oldendorff does not argue that JKI is barred from actually raising/prosecuting its counterclaims since such claims are in fact being litigated in London.  Rather, it argues that since JKI's claims are clearly "compulsory counterclaims" as defined by Rule 13(a), and because JKI could have interposed the same in Oldendorff's attachment action, it should now be barred from affirmatively filing these claims in a separate maritime attachment action.

This is particularly appropriate where JKI has unfairly manipulated the maritime attachment remedy to gain leverage against Oldendorff within an *ex parte* proceeding instead of through the counterclaim process.  However, as it was likely aware, had it so proceeded with a counterclaim, where it would have had to have provided supports for its alleged claim, not construct a mere *prima facie* claim, then Oldendorff could have shown *at that time* the claims lacked any merit and thereby Oldendorff would have avoided having its property attached.

Tactics such as those employed by JKI met considerable disfavor in Chiquita Int'l Ltd. and Great White Fleet Ltd. v. M/V Bosse, 2007 U.S. Dist. LEXIS 75726 (S.D.N.Y. 2007).  In Chiquita, Judge Leisure vacated plaintiff's attachment since such attachment was obtained notwithstanding the fact that defendant therein had earlier initiated a still pending attachment action.  Rather than

appear within that action, and raise its claim for security on a counterclaim (as JKI could have done here), plaintiff initiated its own attachment proceeding. This Judge Leisure found to be an abuse of the attachment process that "took advantage of the ex parte nature of … Rule B." See Chiquita, 2007 U.S. Dist. LEXIS 75726 at *27 – 28.

Similarly, although JKI knew of Oldendorff's attachment action[5] it too abused the attachment process, taking advantage of the ex parte nature of a Rule B attachment. These tactics, along with the ample showing herein that JKI's claims lack merit and are unrecoverable under English law, its attachment should be vacated. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 442-445 (2d Cir. 2006) (district court vested with inherent authority to vacate an abusive or otherwise unfair attachment).

JKI hoists itself on its own petard where it argues, relying on Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc., 2002 U.S. Dist. LEXIS 377 (S.D.N.Y. 2002)[6], that the compulsory counterclaim rule does not apply to JKI's claims because the same had not "matured" by the time Oldendorff's action had been dismissed. This is not true as set out above in discussing the times at which JKI clearly concedes it knew of the existence of its claims.

However, even if JKI is correct about its lack of knowledge and/or premature nature of its claims, then the by far greatest portion of the indemnities it has asserted against Oldendorff for cargo receiver claims, the $1,197,000[7] MMTC Ltd "anticipated claim" (Mohan Decl. ¶42), must *immediately* fall away since how can it have matured if it has not even been the subject of an invoice from MMTC? (*cf.* cargo receiver invoices - Mohan Decl., Ex. 19). Yet, notwithstanding its hollow argument that it was not even aware of the existence of its claims by the time Oldendorff's

---

[5] Oldendorff served JKI with a notice of attachment on July 20, 2007. See copy of notice attached hereto as Exhibit 2.
[6] The Hilfiger case concerned whether Defendants would be permitted to bring counterclaims that arose *after they had answered* as compulsory under Rule 13(a). As JKI never appeared or answered in the Oldendorff action the Hilfiger decision is irrelevant to the issues presented herein.
[7] $1,604,094 with claimed 10.25% interest for three years

attachment had been dismissed, it apparently had no hesitation in seeking and obtaining security for the MMTC premature (non-existent?) claim. As the saying goes, JKI cannot have its cake and eat it too.

Finally, the Court should not be distracted by JKI's galling complaint that Oldendorff is trying to secure an "inequitable and disorderly outcome." (JKI Memorandum of Law at 18 – 19). What is actually highly inequitable and disorderly is the manner in which JKI has carried out its efforts against Oldendorff. Had JKI filed its counterclaim in Oldendorff's attachment as per Supplemental Rule E(7), it could have sought security up to the full amount of its alleged claim notwithstanding that the principle governing counter-security is that it is designed to place the parties on "equal footing as regards security." See Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409, *9 (S.D.N.Y. 2006) citing Result Shipping Co. Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394, 399 - 400 (2d Cir. 1995).

Thus, although Oldendorff is vested with security of $1,500,000 for its claims, this would not, in and of itself, have inhibited JKI from asserting counterclaims for the alleged value of its claim which it has pled herein in a sum nearly 3 times greater than that of Oldendorff's claim. However, it would seem that JKI recognized that had it done so that its claims, and threadbare supports therefore, would have been subject to review by Oldendorff and this Court. It thus elected to initiate its own action, ignoring the mandate of Fed R. Civ. P 13(a), which should be read in conjunction with Supplemental Rule E(7), thereby illegitimately maximizing leverage through a Rule B attachment against Oldendorff. Such sharp practice should not be permitted by this Court.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Ex Parte Attachment Order and dismiss JKI's action.

11

Dated: December 14, 2007
      New York, NY

 

                  Respectfully submitted,

                  The Defendant,
                  OLDENDORFF CARRIERS GMBH & CO.

By:_____
                  Kevin J. Lennon
                  Patrick F. Lennon
                  LENNON MURPHY & LENNON, LLC
                  420 Lexington Avenue, Suite 300
                  New York, NY 10170
                  (212) 490-6050 – phone
                  (212) 490-6070 – fax
                  kjl@lenmur.com
                  pfl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on December 14, 2007, a copy of the foregoing Reply Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____

Kevin J. Lennon

# EXHIBIT 1

## THE CHARTERERS P&I CLUB

65 Leadenhall Street London EC3A 2AD

+44 20 7702 3928 (tel) · +44 20 7702 3993 (fax) · charterers@else.co.uk · www.else.co.uk

Oldendorff Carriers GmbH & Co of Lubeck, Germany,
C/O MFB
45 Moorfields
London
EC2Y 9AE                                                    27 July 2007

Dear Sirs,

Re: "FREDERIKE OLDENDORFF" – Claim by Oldendorff Carriers GMBH &
Co ("Oldendorff") against J K International Pty Ltd ("JKI") under the
Charterparty dated 12th April 2007 between Oldendorff as owners and JKI as
Charterers for hire payable in respect of loss of time during the period in
which the main engines of the vessel were broken down and/or were being
repaired due to damage which is found to have been caused by the bunkers
stemmed by JKI in Singapore on 28th May 2007 as set out in the JKI
Schedule of off-hire details showing an off-hire total of 26.95444 days (copy
attached) ("the Claim").

In consideration of you Oldendorff releasing without delay funds belonging to
JKI which are presently the subject of an attachment in New York to the value
of US$1,486,886 (United States Dollars one million, four hundred and eighty
six thousand, eight hundred and eighty six dollars only), in a civil action styled
Oldendorff Carriers GmbH & Co v. J.K. International PTY. Ltd number 07 CV.
6467 (KMK) ECF CASE, now pending in the United States District Court for
the Southern District of New York, and in consideration of your refraining from
attempting to re-arrest or otherwise re-detain, re-injunct or re-attach the same
property or funds following their release or from making any further attempts
to attach assets in the ownership or associated ownership of JKI  or of its
subsidiaries  or under the control or management of JKI or of its subsidiaries
as security for the Claim: WE HEREBY UNDERTAKE to pay to you within 14
days of receipt of your first written demand such sum as may either be agreed
in writing between you and us to be  due to you from JKI in respect of the
Claim, or as may be awarded to you in respect of the Claim  by means of a
final and unappealable arbitration award in London from a tribunal  constituted
in accordance with the Charterparty or by final judgement of the High Court of
Justice in London, on appeal therefrom, PROVIDED ALWAYS that our
maximum liability hereunder shall in no circumstances whatsoever exceed the
total sum of US$1,486,886 (United States Dollars one million, four hundred
and eighty six thousand, eight hundred and eighty six dollars only) inclusive of
interest and inclusive of costs in total.

MICHAEL ELSE AND COMPANY LIMITED
Underwriting Agents
Authorised and Regulated by the Financial Services Authority
Registered in England 1345933

This letter of undertaking is given without prejudice to the rights of JKI to seek security from you in respect of JKI's claims and/or counterclaims.

This letter of undertaking is given without prejudice to all rights and defences whatsoever which may be available to JKI including but not limited to rights to claim damages and/or off-hire and/or make any counterclaim under the terms of the above Charterparty.

Save for the specific undertakings in the second paragraph above, nothing in this letter of undertaking shall be construed as a waiver of any right you may have under the charter party. In particular, it is recognised and expressly acknowledged on behalf of JKI that you are entitled to bring and secure further claims against JKI including but not limited to claims in respect of further delays to the vessel, repairs to her engines, the cost of replacement fuel, cleaning of bunker tanks, any disputed hire not contained in the Claim above and associated interest and costs.

This letter of undertaking shall be governed by and construed in accordance with English law and any dispute hereunder shall be subject to the exclusive jurisdiction of the High Court of Justice in London.


Yours faithfully


Michael Else and Company Limited as Underwriting Agents for and on behalf of A. F.Beazley Syndicate (Lloyd's Syndicate No. AFB 623/2623)

p.p.

**Richard Bokszczanin**
**Director**

EXHIBIT 2

# LENNON, MURPHY & LENNON, LLC — *Attorneys at Law*

| | | |
|---|---|---|
| The GrayBar Building | Patrick F. Lennon - *pfl@lenmur.com* | Tide Mill Landing |
| 420 Lexington Ave., Suite 300 | Charles E. Murphy – *cem@lenmur.com* | 2425 Post Road |
| New York, NY 10170 | Kevin J. Lennon – *kjl@lenmur.com* | Southport, CT 06890 |
| *phone* (212) 490-6050 | Nancy R. Peterson - *nrp@lenmur.com* | *phone* (203) 256-8600 |
| *fax* (212) 490-6070 | | *fax* (203) 256-8615 |

July 20, 2007

***Via FedEx and facsimile 011 61 7 3274 1367***
J.K. International Pty. Ltd.
49 Suscatand Street, Rocklea,
Brisbane, QLD
4106, Australia

Re:    **Oldendorff Carriers GMBH & Co. v. J.K. International Pty. Ltd.**
          Docket No: 07 Civ. 6467 (KMK)
          United States District Court, Southern District of New York
          LML ref:  1167

Dear Sir or Madam:

        We represent the Plaintiff, Oldendorff Carriers GMBH, in the above referenced lawsuit.
We write to advise you that pursuant to an ex parte order of maritime attachment and
garnishment issued in the above referenced lawsuit, your property was attached at BNP Paribas
in the amounts of $542,239.72, $36,632.36 and $227,299.01 and by Wachovia in the amounts of
$230,865.99, $144,091.48, $16,111.11 and $22,632.30 on or about July 20, 2007.

        Please find attached to this letter all pleadings filed in the above referenced lawsuit
including, but not limited to, the Summons and Complaint.  Please also find attached hereto
copies of the Ex-Parte Order and Writ of Attachment.  If you have any questions or concerns,
please contact us at your convenience.  This letter is sent pursuant to Local Rule B.2 of the Local
Rules for the United States District Court for the Southern District of New York.

                                        Kind regards,

                                        Nancy R. Peterson

/Enclosures



JUDGE KARAS

# UNITED STATES DISTRICT COURT

_____Southern_____  District of  _____New York_____

OLDENDORFF CARRIERS GMBH & CO.,

**SUMMONS IN A CIVIL ACTION**

V.

J.K. INTERNATIONAL PTY. LTD

CASE NUMBER:

TO: (Name and address of Defendant)

     J.K. INTERNATIONAL PTY. LTD
     Australia

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

     Nancy R. Peterson
     Lennon, Murphy & Lennon, LLC
     The GrayBar Building
     420 Lexington Ave., Suite 300
     New York, NY 10170

an answer to the complaint which is served on you with this summons, within _____30_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

JUL 1 7 2007

CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                        Date                                         *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

```
x   x   x  Communication Result Report ( Jul. 20. 2007  7:06PM ) x  x  x
                                          1) Lennon, Murphy & Lennon LLC
                                          2) Tide Mill Landing, Southport
```

Date/Time: Jul. 20. 2007  6:59PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0928 Memory TX | 01161732741367#1167 | P. 20 | OK | |

```
Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size
```

---

LENNON, MURPHY & LENNON, LLC – *Attorneys at Law*

The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
*phone* (212) 490-6050
*fax* (212) 490-6070

Patrick F. Lennon – *pfl@lenmur.com*
Charles E. Murphy – *cem@lenmur.com*
Kevin J. Lennon – *kjl@lenmur.com*
Nancy R. Peterson – *nrp@lenmur.com*

Tide Mill Landing
2425 Post Road
Southport, CT 05890
*phone* (203) 256-8600
*fax* (203) 256-8615

July 20, 2007

*Via FedEx and facsimile 011 61 7 3274 1367*
J.K. International Pty. Ltd.
49 Suncatand Street, Rocklea,
Brisbane, QLD
4106, Australia

Re:   **Oldendorff Carriers GMBH & Co. v. J.K. International Pty. Ltd.**
      Docket No: 07 Civ. 6467 (KMK)
      United States District Court, Southern District of New York
      LML ref:  1167

Dear Sir or Madam:

We represent the Plaintiff, Oldendorff Carriers GMBH, in the above referenced lawsuit. We write to advise you that pursuant to an ex parte order of maritime attachment and garnishment issued in the above referenced lawsuit, your property was attached at BNP Paribas in the amounts of $542,239.72, $36,632.36 and $227,299.01 and by Wachovia in the amounts of $230,865.99, $144,091.48, $16,111.11 and $22,632.30 on or about July 20, 2007.

Please find attached to this letter all pleadings filed in the above referenced lawsuit including, but not limited to, the Summons and Complaint. Please also find attached hereto copies of the Ex-Parte Order and Writ of Attachment. If you have any questions or concerns, please contact us at your convenience. This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

Kind regards,

Nancy R. Peterson

/Enclosures